On rehearing,
McFarland, J.,
delivered the opinion of the court.
*612 This cause was heard at the last term, and an opinion announced reversing the decree and dismissing the bill. A rehearing however was granted, which has been had at the present term.
The complainant charges that the defendant Kennedy is indebted to him in several amounts specifically set forth in the bill. He then charges that the said Kennedy is the owner of two certain promissory notes made payable to him by the defendant Patton, which notes are fully described. The bill further says, that these notes, as complainant is informed and believes, were given “for the purchase price on part of a stock of goods sold or pretended to be sold by Kennedy to Patton, which sale or pretended sale, your orator charges to have been made to defraud the creditors of Kennedy.” It is then further charged that Kennedy is about to transfer or negotiate these notes, and also the various grounds specified by statute for attachment are charged in the alternative to exist as to the defendant Kennedy.
The prayer of the bill is for an attachment against the estate of Kennedy, and that said two notes be “attached specifically, and held for the payment of complainants debt.” An injunction is also prayed for enjoining said defendant from a sale or transfer of said notes, with a prayer for the decree of the complainants debt, subjecting to its payment the property attached, and for general relief. An injunction and attachment issued. The attachment is in accordance with the prayer of the bill. It commands the officers to attach the estate of Kennedy generally, and specifi *613 cally to attach the two notes given by Patton to Kennedy. The injunction was executed, and the sheriff returned that he levied the attachment upon a certain stock of groceries in the possession of the defendant Kennedy. It appears that soon after, Patton executed a replevin bond claiming these groceries as his own. This bond is substantially in the form prescribed by the statute, and conditioned to pay the debt, if the court shall so decree. It appears that this stock of groceries is the same referred to in the bill as having been sold by Kennedy to Patton, and for which the notes sought to be attached were given. Upon the execution of this replevin bond, as we infer, the goods were restored to Patton. The defence of Patton is rested on several grounds; and first it is insisted in the answer and in argument that this bill does not attack the sale or transfer of this stock of goods from Kennedy to Patton; nor was an attachment 'of these goods sought, and we are strongly inclined to this view of the case. It is true that the bill charges this sale or pretended sale to have been to defraud the creditors of Kennedy. It is not directly charged that Patton had knowledge or participation in this fraudulent purpose of Kennedy. But if the bill in other respects was framed to meet this view of the case, we would probably hold ’ the fraud sufficiently charged. We find however, that although, this charge is made as to the fraud, yet the bill prays specifically that the notes given by Patton for the ■goods be attached and applied, to the payment of ■complainant’s debt. There is no prayer that the *614 goods be attached, nor is there any prayer that the sale from Kennedy to Patton be declared fraudulent and set aside, nor is this prayed for in the alternative. As we have said, the specific prayer is that these notes be attached and applied to the payment of complainant’s debts.- Under the prayer for general relief, it has often been allowed to grant relief different from the specific relief prayed for, but we suppose not relief inconsistent with the case made by the bill. Had the complainant sought by this bill to attach the goods, have the sale of them from Kennedy to Patton declared fraudulent, and the goods sold for the payment of his debt, and prayed also, in the alternative that if the court should be of opinion that the sale was not fraudulent, the price given for their purchase should be applied to his debts, a different question would be presented. But here the case is placed upon the complainant’s rights to subject the debt due for the goods, to the payment of his debt. This must be upon the assumption that the sale was not fraudulent, or if so, that the fraud was waived. See 3 Head, 390. Although it is stated that the sale was fraudulent, this is inconsistent with the relief prayed for, and the direct issue as to the validity of the sale is not made by the prayer' of the bill. We would take it from the entire bill, that it was intended by the complainant to waive the fraud of the parties, and place his case upon his rights to reach the notes, not choosing ta risk attaching the goods.
We are inclined to hold therefore, that the issue *615 as to the validity of this sale is not made in- the bill in such a manner as to require determination.
These goods were attached simply as the property of the defendant Kennedy, they were replevied by Patton. It appears clearly, that the goods did belong to Patton, unless the sale to him by Kennedy be declared fraudulent; this question, as we have said, is not presented in this record. It would follow that the complainant is entitled to no relief as to the goods, or upon the bond of Patton.
The same result may be reached upon a different ground. It appears from the answer and proof that after the sale of the goods to Patton, an execution from the Circuit Court of the United States for West Tennessee, in favor of Vansyckle & Co., upon a judgment against the defendant Kennedy and one Shelby, was levied upon the goods in question. This execution bore test of a date prior to the sale of the goods to Patton, and overreached the sale. Kennedy therefore, gave a delivery bond for the delivery of the goods to the marshal, on the :-day of July following, with the defendant Patton as security.
A question earnestly argued is, which levy is prior in point of time, the levy of the marshal or the sheriff, under the attachment. The return of the marshal shows that his levy was made on April 20, 1867, and the delivery bond taken on the 25th; the return of the sheriff shows that his levy was made oh April 25, 1867, at 11 A. M. It is insisted that the proof shows that the levy of the sheriff was in fact made on the 24th, while the mar.-hal’s levy was *616 not made until the 26th. We must take the returns as prima facie true, and we do not see that the proof authorizes us to fix a different time as the true date of either of the levies. A levy upon personal property consists, not in the writing upon the process, but in the actual seizure of the goods by the officer acting under the process. And upon this record we must assume the fact to be that the goods were first seized by the marshal, and released upon the delivery bond referred to. They were then seized by the sheriff, and released upon the replevin bond of Patton, and upon this state of facts what would be the law ? As between the process from the Federal and State Courts, the priority of lien depends upon first actual seizure of the goods. In this respect the priority of the teste of the process is not the question, as we have recently held. It would result that the marshal having first seized the goods, so long as he held or claimed them under his process, the attachment from the State Court could not be properly levied. This would result in a con Act of jurisdiction. The goods, however, were released upon a delivery bond, before the sheriff’s seizure, and it is true that the marshal is not before this court claiming to enforce his lien, but as we have seen, the levy of the marshal was rightful as against Patton. As to his purchase, the execution from the Federal Court related to its test, and Patton became surety upon Kennedy’s delivery bond, and became equally bound for the delivery of the goods or their value, and as such surety, he has in equity the right, by virtue of the lien of the ex- *617 edition from the Federal Court, to see that the goods are not removed beyond the possibility of being delivered in accordance with the delivery bond. See Dechard v. Edwards, 2 Sneed 93, and this independent of his right under this purchase, and we see no reason why this defence may not be set up by answer without cross bill, as Patton is made a party by the original bill, and relief asked against him, as to this transaction.
No relief can be granted as to the two notes sought to be reached. The bill, as to these notes, is in the nature of a garnishment bill. It appears in the answer and proof that before this bill was filed these notes had been placed in the hands of third parties, who claim to be the creditors of Kennedy, as collateral security for debts claimed against him. ~We caiinot adjudge between complainants and these third parties as to who is entitled to collect these notes for, the reason that said holders of the notes are not parties to this cause.
The decree, heretofore ordered by this court, reversing the decree of the Chancellor and dismissing the bill, will not be disturbed so far as the defendant Patton is concerned, but it will be modified so as not to affect the decree rendered by the Chancellor against Kennedy' for the amount of complainant’s debt, Kennedy not having appealed.